# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# 5:13-cv-589

| | |
|---|---|
| HUMANE SOCIETY OF ) | |
| THE UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| RALEIGH TRANSIT AUTHORITY, ) | |
| COREY D. BRANCH, ) | |
| CRAIG RALPH, LES SEITZ, JANE ) | |
| THURMAN, and LEMUEL ) | |
| WHITSETT, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, the Humane Society of the United States ("Plaintiff") by its attorneys, for its Complaint against Defendants, alleges upon personal knowledge, and upon information and belief as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This Complaint challenges (1) Defendants' unconstitutional restriction on Plaintiff's right to engage in protected speech based on the content and viewpoint of Plaintiff's message and (2) Defendants' facially invalid Bus Advertisement Policy. Specifically, Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution by rejecting, on the basis of its "negative" message, artwork and text submitted by Plaintiff for an advertisement it sought to display on buses owned and operated by the City of Raleigh.

2. Plaintiff seeks a declaration that Defendants violated Plaintiff's clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants' action restricting Plaintiff's speech violates the United States Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; a permanent injunction enjoining Defendants' continued unlawful restriction on Plaintiff's speech; and nominal damages for the injury sustained by Plaintiff as the result of Defendants' violation of Plaintiff's constitutional rights. Plaintiff also seeks an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

3. This lawsuit alleges violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Accordingly, this Court has "federal question" jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

4. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Federal Rules of Civil Procedure 57 and 65, and by the general legal and equitable powers of this Court. Plaintiff's claim for nominal damages is authorized by 42 U.S.C. § 1983.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in the City of Raleigh, which is located within the Eastern District of North Carolina.

## THE PARTIES

6. Plaintiff the Humane Society of the United States ("HSUS") is a non-profit organization headquartered in Washington, DC. The HSUS is the nation's largest animal protection organization, with more than eleven million members and constituents. The HSUS is

committed to fostering the humane treatment of all animals by advocating for better laws to protect animals, conducting campaigns to reform industries, providing animal rescue and emergency response, investigating cases of animal cruelty, and caring for animals through sanctuaries, wildlife rehabilitation centers, emergency shelters, and clinics. As one component of its mission, the HSUS seeks to reduce the suffering of animals raised for food by implementing public education campaigns aimed at raising awareness of inhumane farming practices. The HSUS purchases advertising space on public transit operated in cities throughout the United States as part of that public education campaign.

7. Defendant Raleigh Transit Authority ("RTA") is a government board established by the City of Raleigh (the "City") pursuant to Raleigh, N.C., Code § 11-4001 (1975). The City is a municipal corporation organized and existing under and by virtue of the laws of the State of North Carolina. RTA is a governmental entity for all relevant purposes as defined by this Complaint.

8. The Raleigh City Code delegates responsibility to the RTA to set general transportation policy for Raleigh within funding and budgeting parameters approved by the Raleigh City Council. The RTA comprises nine citizens who are appointed by the Raleigh City Council. Members of the RTA serve for two-year terms without pay.

9. Defendant Corey D. Branch, at all times relevant herein, was a member of the RTA, which has sole and unquestioned authority to determine what constitutes appropriate advertising to display on City buses. Mr. Branch is sued in his official capacity.

10. Defendant Craig Ralph, at all times relevant herein, was a member of the RTA, which has sole and unquestioned authority to determine what constitutes appropriate advertising to display on City buses. Mr. Ralph is sued in his official capacity.

3

11. Defendant Les Seitz, at all times relevant herein, was a member of the RTA, which has sole and unquestioned authority to determine what constitutes appropriate advertising to display on City buses.  Mr. Seitz is sued in his official capacity.

12. Defendant Jane Thurman, at all times relevant herein, was a member of the RTA, which has sole and unquestioned authority to determine what constitutes appropriate advertising to display on City buses.  Ms. Thurman is sued in her official capacity.

13. Defendant Lemuel Whitsett, at all times relevant herein, was a member of the RTA, which has sole and unquestioned authority to determine what constitutes appropriate advertising to display on City buses.  Mr. Whitsett is sued in his official capacity.

14. Collectively, Defendants named in paragraphs 7 through 13 above shall be referred to as "Defendants" in this Complaint.

## STATEMENT OF FACTS

**HSUS's Advertising Campaign on Gestation Crates**

15. Beginning in 2002, the HSUS began a campaign to advocate against the pork industry's use of gestation crates—devices used to confine female breeding pigs for virtually their entire lives.  Gestation crates are approximately two feet wide, barely larger than a sow's body.  These crates are so small that pigs confined in them cannot turn around or take more than one step forward or backward.  Renowned animal welfare scientists have called for the phasing out of the gestation crate system, supporting HSUS' position that the duration and brutality of sows' confinement in these crates causes tremendous suffering.

16. As part of its multi-pronged campaign, HSUS has successfully led the charge in nine states to ban gestation crates, by either ballot initiative or through the legislature.  These states include Florida, Maine, Colorado, California, Ohio, Rhode Island, Michigan, Oregon, and

4

Arizona. In addition, the HSUS's corporate outreach efforts have resulted in announcements from nearly fifty of the world's largest food companies (including McDonald's, Burger King, Costco, Sodexo, ConAgra, DineEquity, and Compass Group, among others) that they will eliminate gestation crates from their supply chains.

17. The HSUS's campaign against gestation crates also includes a public education campaign aimed at raising awareness of the pork industry's use of gestation crates. Despite the HSUS's numerous corporate and legislative victories, and despite the fact that major pork producers such as Smithfield Foods and Hormel Foods have announced plans to rid their company-owned facilities of gestation crates by 2017, gestation crates continue to be the predominant housing method for breeding sows in the United States.

18. As part of this public education campaign, the HSUS designed exterior bus advertisements intended to raise awareness of the pork industry's use of the crates—a practice that is typically hidden from public view by the pork industry—and to express the HSUS's view that the practice of gestation crates is unacceptable and inhumane.

19. The bus advertisement designed by HSUS depicts, on each side of the bus, non-graphic photographic images of pigs confined to gestation crates, with text reading, "How would you like to spend the rest of your life in a space as small as a bus seat? It's what Big Pork wants for pigs. But together we can change that." On the rear of the bus, the advertisement consists of a single pig lying on her side in a gestation crate, together with text reading "She can't even turn around. Together we can change that." The HSUS logo and a link to a website about the campaign appear on both the side panels and the rear panel of the advertisement.

20. In 2012, this advertisement was accepted by the Des Moines Area Regional Transit Authority ("DART") and appeared on DART buses from December 14, 2012 through

5

May 14, 2012. Iowa is the largest pork producing state in the country. The advertisement was also accepted by the Washington Metropolitan Area Transit Authority ("WMATA") and began appearing on WMATA buses on November 26, 2012. The advertisement continues to be displayed on WMATA buses, subject to monthly renewal.

21. In September 2012, the HSUS approached the City about purchasing space for this advertisement on one of the City's public buses. The HSUS's request was rejected on the ground that the RTA deemed the advertisement to be "too negative."

**The RTA's Control Over Advertising on City Buses**

22. The Transportation Operations Division within the City's Public Works Department administers the City's public transportation system, known as Capital Area Transit ("CAT"). CAT has been publicly supported since 1975. The City owns the buses and all other vehicles CAT uses, as well as the bus maintenance facility. The City contracts with ATC/Vancom Management Services, Inc., for day-to-day operation of the bus system, including employment of bus operators and maintenance and administrative personnel. CAT's bus service operates thirty-seven fixed routes and two express routes throughout the city, serving an average of five million passengers per year.

23. CAT sells advertising space on the exterior of the City's public buses through a Transit Marketing Specialist, who is employed by the City's Public Works Department, Transportation Operations Division, located in the Avery C Upchurch Municipal Complex. Specifically, individuals and organizations are encouraged to contact the Transit Marketing Specialist to purchase "vinyl wrap bus advertising." Vinyl wrap bus advertising is a large advertisement produced on vinyl, which is then applied to the bus exterior.

6

24. According to the City's website, vinyl wrap bus advertising is a very effective way to reach a large and diverse audience. Exterior bus advertisements are seen not only by the 14,000-plus passengers who travel by CAT bus each day, but also by tens of thousands of Raleigh's residents and visitors who see CAT buses in their everyday lives. Advertising buses rotate routes, ensuring widespread exposure of advertisements throughout the City. The City's website proclaims that "[v]inyl wrap advertising is not only BIG and bold, but it can be extremely creative and colorful too. Vinyl wrap bus advertising also generates the highest unprompted recall rate of any out-of-home advertising media."

25. The City's Bus Advertising Policy (the "Policy") is included in the Bus Advertising Rate Sheet, an electronic copy (.pdf) of which is available on the City's website. *See* Bus Advertising Rate Sheet, Ex. A. The Policy, as revised on March 8, 2012 and in effect at the time HSUS submitted its proposed advertisement, states: "All advertising must be approved by the Raleigh Transit Authority." *Id.* at 5. The Policy further states:

> The Raleigh Transit Authority has sole and unquestioned authority to determine what constitutes appropriate advertisements. The following standards for advertising have been adopted and such advertising may not be displayed:
>
> 1. Is false, misleading or deceptive;
> 2. Relates to an illegal activity;
> 3. Advertises alcohol or tobacco products;
> 4. Supports or opposes a candidate, issue or cause, or which advocates or opposes a religion, denomination, religious creed, tenet or belief;
> 5. May be construed to reflect endorsement by Capital Area Transit, the Raleigh Transit Authority, or the City of Raleigh of a particular product, service, idea, etc.

*Id.*

26. Neither the Policy nor any other document of which Plaintiff is aware provides guidance on the standard the RTA applies to determine when advertising "[m]ay be construed to

7

reflect endorsement by Capital Area Transit, the Raleigh Transit Authority, or the City of Raleigh of a particular product, service, idea, etc."

27. Neither the Policy nor any other document of which Plaintiff is aware provides guidance on what RTA considers to be an "issue or cause" within the meaning of the Policy.

28. The RTA has previously approved vinyl-wrap bus advertisements advocating concepts and ideas that are readily identifiable as "issues" or "causes." For example, the CAT Bus Advertising Guide depicts an advertisement advocating HIV prevention. *See* CAT Bus Advertising Guide at 3, Ex. B. Upon information and belief, Plaintiff further alleges that the RTA has previously approved other advertisements advocating "issues" and "causes."

29. Accordingly, RTA, through policy and practice, has designated CAT's exterior bus advertising space as a limited public forum for expressive conduct.

**The RTA's First Rejection of HSUS's Advertisement**

30. On September 26, 2012, the City's Transit Marketing Specialist, acting on behalf of the RTA, informed Plaintiff that the RTA had rejected the HSUS advertisement on the ground that the advertisement was "too negative" ("RTA's Initial Rejection"). RTA's Initial Rejection concluded with an invitation to Plaintiff to modify its speech so that it would be "less negative" and acceptable to RTA. A true and accurate copy of Plaintiff's email correspondence with the Transit Marketing Specialist, including the RTA's Initial Rejection, is attached to this Complaint as Exhibit C.

31. As documented in Exhibit C, on September 6, 2012, Arzinda Jalil, Advertising & Public Service Campaign Coordinator of the HSUS, emailed Lindsey Pennell, Transit Marketing Specialist for the City of Raleigh, Public Works—Transit, stating that HSUS was interested in purchasing a full bus wrap for approximately six months. *See* Ex. C.

8

Case 5:13-cv-00589-FL   Document 1   Filed 08/15/13   Page 8 of 13

32. Later that day, Pennell responded attaching a bus advertising guide and stating, "Please let me know what questions you may have and as soon as you decide how many buses and how long we can get a contract started." *Id.*

33. At 11:51 a.m. on September 26, 2012, Jalil emailed Pennell stating, "We would like to proceed with a full bus wrap for 6 months. I actually should have the artwork ready today to send to you for approval. It's also been sized per the spec sheet approval. How soon do you think we can start if we get you the artwork today for approval?" Jalil also included HSUS's billing information and a credit reference. *Id.*

34. At 1:54 p.m. on the same day, Pennell responded that if the artwork was approved the advertisement could be installed on Sunday, October 7, 2012. Jalil responded attaching the artwork and background information on gestation crates. *Id.*

35. At 3:42 p.m.—less than two hours after Jalil sent the proposed advertisement to Raleigh's Transit Marketing Specialist—Pennell responded, stating:

> I have forwarded the design to our Transit Authority Marketing Committee members and unfortunately they have rejected the ad design due to the following points:
>
> **Image of the pigs is too negative for us to place on the buses.** Due to our bus advertising policy the following cannot be displayed:
>
>> May be construed to reflect endorsement by Capital Area Transit, the Raleigh Transit Authority, or the City of Raleigh of a particular product, service, idea, etc.
>
> **They said that if the images were less graphic or the ad was less negative they could approve.** Some ideas given were….Make a cartoon pig in a small bus seat looking sad, or a slogan "Don't Blog-Help the Hog"
>
> **Unless the design can be altered they will not approve and therefore I cannot move forward with a contract.** I would love to work with you and the Humane Society, so please let me know if you are able to alter the design at all!

9

*Id.* (emphasis added).

**The RTA's Second Rejection of HSUS's Advertisement**

36. As documented in Exhibit C, on October 10, 2012, in an effort to allay the RTA's concern that the ad could be construed to reflect endorsement by the RTA or the City, Jalil responded:

> I've been holding on this as I wait for feedback in the other markets we are running in. It has been approved in other markets with some text added. I'm wondering if this would work for Raleigh as well. For example, in DC we are adding this disclaimer everywhere the logo appears:
>
> > *"This is a paid advertisement sponsored by The Humane Society. The advertising space is a designated public forum and does not imply WMATA's endorsement of any views expressed"*
>
> I can also provide background documentation of our claims expressed on the ad as well which is what we did for the DC area. Do you think adding the text would be enough for approval? I'm hoping we can run in Raleigh, but I can't see us doing a cartoon pig. Please let me know your thoughts.

*Id.*

37. The following day, Pennell responded, rejecting the advertisement for a second time: "I submitted your proposal to our Transit Authority and they still rejected the ad even with the addition of the wording. I wish we could work something out. Please let me know if anything changes with the images. Thanks." *Id.*

## CLAIM FOR RELIEF

**Freedom of Speech—First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

38. Plaintiff hereby incorporates by reference all stated paragraphs.

39. By reason of the aforementioned rejection of the HSUS's advertisement, Defendants acted under color of state law to deprive the HSUS of its right to engage in protected

speech in a public forum in violation of the Free Speech Clause of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

40. Defendants' Policy is vague, and therefore is facially invalid, because it fails to provide notice of what advertisements will be rejected under the Policy, and permits arbitrary and capricious application of the Policy to bar certain speech based on the whim of a government official.

41. Defendants' action is a content- and viewpoint-based restriction on Plaintiff's free expression in violation of the Free Speech Clause of the First Amendment.

42. Defendants' restriction operates as a prior restraint on Plaintiff's protected speech in violation of the Free Speech Clause of the First Amendment.

43. Defendants' restriction of Plaintiff's protected speech is unreasonable, arbitrary, and capricious in violation of the Free Speech Clause of the First Amendment.

## PRAYER FOR RELIEF

The Raleigh Transit Authority's denial of Plaintiff's advertisement restricts, unduly burdens, and chills Plaintiff's right to exercise free speech secured by the First Amendment to the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment to the Constitution.

WHEREFORE, Plaintiff respectfully requests that this Court:

- A. declare that Defendants' rejection of Plaintiff's advertisement on public buses based on Defendant's objection to the content of the advertisement is unconstitutional and violates Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

- B. permanently enjoin Defendants from restricting Plaintiff's speech by refusing to run Plaintiff's advertisement as set forth in this Complaint;

C. award Plaintiff nominal damages for the past deprivation of its constitutional rights as set forth in this Complaint;

D. award Plaintiff its reasonable attorneys' fees, costs, and disbursements of this action pursuant to 42 U.S.C. § 1988 and other applicable law; and

E. grant such other and further relief as the Court may deem just and proper.

This the 15th day of August, 2013.

/s/Jonathan D. Sasser
Jonathan D. Sasser
N.C. State Bar. No. 10028
Kelly Margolis Dagger
N.C. State Bar. No. 44329
Ellis & Winters LLP
P.O. Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010
jon.sasser@elliswinters.com
kelly.dagger@elliswinters.com

Peter A. Brandt
CA. State Bar No. 241287
Jonathan R. Lovvorn
D.C. Bar No. 461163
The Humane Society of the United States
2100 L Street, NW
Washington, DC 20037
Tel:  (202) 676-2325
Fax:  (202) 676-2357
jlovvorn@humanesociety.org
pbrandt@humanesociety.org
*Special Appearances Pursuant to Local Civil Rule 83.1(e) Forthcoming*

*Counsel for Plaintiff the Humane Society of the United States*